IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>JAMES MASSEY, also known as "Steve )<br>Nash" ) | Case No. 21 CR 142 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

A grand jury returned an indictment charging James Massey with violating the Anti-Riot Act, 18 U.S.C. § 2101. The indictment alleges that Massey incited, participated in, and carried on, a riot in Chicago on August 9-10, 2020.

Massey has filed a motion to dismiss the indictment. He argues that the Act is facially overbroad and that the allegations in the indictment are insufficient to state an offense. The Court denies the motion for the reasons set forth below.

### Background

In November 2020, a grand jury returned an indictment alleging the following facts. Massey maintained a Facebook account under the name "Steve Nash," and on August 9 and 10, 2020, he posted a handful of live Facebook videos and messages. These messages included the following:

- "ATTENTION ATTENTION LOTTING [sic] START AT 12am tonight . . . WE WILL NOT BE FUCKING UP THE SOUTH SIDE EAST SIDE OR WEST SIDE DOWNTOWN AREA AND UP NORTH AREA ONLY BRING YA TOOLS SKI MASK AND GLOVES #LETSGOOOOO."
- "Bro im hitting phone store."

- "Lets get ready to steal bitch."
- "I finna link up with everybody . . . . Y'all ready? I sent everybody the location to link up at bro. I trying to get something. I need to hit a couple stores."

Later that night, Massey and three other individuals broke into and stole merchandise from four different stores in the Loop and across the near north side of Chicago.

The indictment alleges that Massey used a telephone and the internet, including Facebook, with intent (1) to incite a riot, and (2) to participate in and carry on, a riot, in violation of 18 U.S.C. § 2101(a)(1), (2).

## Discussion

The Anti-Riot Act's key substantive provision states:

> (a) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent
>
> > (1) to incite a riot; or
> >
> > (2) to organize, promote, encourage, participate in, or carry on a riot; or
> >
> > (3) to commit any act of violence in furtherance of a riot; or
> >
> > (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;
>
> and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph . . . [s]hall be fined . . . or imprisoned not more than five years, or both.

18 U.S.C. § 2101(a).[1]

The Act also contains a definitional provision, which defines "riot" as a "public

---

[1] The reference to "subparagraph (A), (B), (C), or (D)" in the Act, which do not exist, is a scrivener's error. The Act should instead be read as referring to paragraphs (1) through (4) of subsection (a).

disturbance involving":

> (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or
>
> (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

*Id.* § 2102(a). Additionally, the Act defines the phrases "to incite a riot" and "to organize, promote, encourage, participate in, or carry on a riot" as including, but not limited to:

> urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

*Id.* § 2102(b).

Massey makes two primary arguments in his motion: (1) the Act is facially unconstitutional; and (2) the allegations in the indictment are insufficient to state a violation of the Act.

### A. Facial challenge

Massey contends that paragraphs one and two of section 2101(a) are facially overbroad "because they criminalize speech that 'organizes,' 'promotes,' or 'encourages' a riot." Def.'s Mot. to Dismiss Indictment at 1. Massey also asserts that section 2102(b) runs afoul of the First Amendment by its inclusion of "urging" among the prohibited acts as well as—due to the double negative in the statutory language—mere advocacy. *Id.*

at 2.

Binding precedent forecloses this argument. *See United States v. Dellinger*, 472 F.2d 340, 357–64 (7th Cir. 1972). In *Dellinger*, the Seventh Circuit narrowly interpreted the Anti-Riot Act so that it fell within constitutional limits allowing the government to criminalize incitement of imminent lawlessness. *Id.* at 361–62. The Seventh Circuit reviewed the four paragraphs in section 2101(a) and held that each was "sufficiently closely related as a propelling cause of a riot" to be constitutional. *Id.* at 361. The court also considered the term "urge" in section 2102(b) and concluded that it too "embod[ied] a relation to action" consistent with constitutional requirements. *Id.* The court then interpreted the double negative phrase at the end of section 2102(b): a violation "shall not be deemed to mean . . . ideas or [] expression . . . not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." *Id.* at 363. Over a dissent, the majority theorized that the statute's drafters included this "unnecessary" and "awkward phraseology" based on the assumption that proscribable inciting speech would necessarily include advocacy of violent acts as well. *Id.* at 363 (majority opinion); *see id.* at 412 (Pell, J., concurring in part and dissenting in part) (describing the majority's interpretation as "not only strained beyond reasonable acceptability but [also] unsupported historically"). Thus, the entire statute survived First Amendment scrutiny.

Massey recognizes this precedential uphill battle but nevertheless asserts that the Seventh Circuit would overrule *Dellinger* today if given the chance. To his credit, subsequent Supreme Court precedent has provided additional detail around the constitutional bounds regarding prohibition of incitement. *See, e.g.*, *Ashcroft v. Free*

4

*Speech Coal.*, 535 U.S. 234, 236 (2002) ("[T]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."); *Hess v. Indiana*, 414 U.S. 105, 108 (1973) (explaining that "advocacy of illegal action at some indefinite future time" cannot be punished). Furthermore, two other circuits have recently declined to follow parts of the Seventh Circuit's reading of the Anti-Riot Act and have held that certain provisions of the statute run afoul of the First Amendment. *See United States v. Rundo*, 990 F.3d 709, 716–17 (9th Cir. 2021) (holding that prohibition of encouraging, promoting, or urging is overbroad but finding those provisions severable from the rest of the statute); *United States v. Miselis*, 972 F.3d 518, 536–38 (4th Cir. 2020) (same).

   The Court is unpersuaded that it can appropriately disregard *Dellinger*. The law requires a lower court to adhere to precedent from a higher court unless it is "almost certain that the higher court would repudiate the doctrine if given a chance to do so." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986). The other circuits that have considered the Anti-Riot Act have made arguably viable points. But the Court does not believe Massey has established the requisite level of certainty that the Seventh Circuit would, today, repudiate all or parts of *Dellinger*. *See Rundo*, 990 F.3d at 721–22 (Fernandez, J., concurring in part and dissenting in part); *see also United States v. Betts*, 509 F. Supp. 3d 1053, 1059–61 (C.D. Ill. Dec. 28, 2020) (declining to disregard *Dellinger*).

   The Court further notes that even if it were to follow the Fourth and Ninth Circuits and find some aspects of the statute unconstitutional, the surviving provisions would still preclude dismissal of Massey's indictment. Of note, the indictment charges him with both inciting (§ 2101(a)(1)) and participating in and carrying on a riot (§ 2101(a)(2)),

which the courts in *Rundo* and *Miselis* did not find constitutionally problematic. Yet the bulk of Massey's briefing does not actually address the specific statutory terms undergirding the indictment in his case. *See* Def.'s Mot. to Dismiss Indictment at 4–5 (contesting "organize," "encourage," and "promote"). Similarly, his challenge to the term "urging" in section 2102(b)'s definitional provision, if successful, would still leave intact the term "instigating." *Id.* at 4. Because Massey concedes that any unconstitutional provisions are severable, the terms of the statute that would remain following a successful challenge under *Rundo* and *Miselis* would suffice as a basis for his indictment. *Id.* at 7.

As a word of caution, the Court emphasizes that this holding is premised on the demanding threshold limiting when a district court can disregard binding precedent. It does not necessarily dictate how the case can or should be tried or presented to the jury via instructions. Given that two courts of appeal have recently held that the term "urging" in section 2102(b) as well as that subsection's double negative clause run afoul of the First Amendment, prudence might counsel in favor of steering clear of the use of those terms (if feasible) once the case gets to trial.

**B.     Insufficient indictment**

Massey next contends that the allegations in the indictment are insufficient to state an offense under the Anti-Riot Act. To support this contention, he offers several arguments, none of which has merit.

First, Massey argues that he addressed his statements to "unidentified listeners" on Facebook and that his messages lacked sufficient particularity to constitute incitement. *Id.* at 8–9. On a motion to dismiss, however, the Court must take the

6

indictment's allegations as true and view them in the light most favorable to the government. See United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009). The indictment alleges that in addition to broadcasting over Facebook Live, Massey sent some of his messages to a specific group of Facebook users. Additionally, the indictment alleges that his messages contained a time (12 am) and place ("north area," "phone store," and "the location to link up"). Taking these facts as true, "it's possible to view [Massey's] conduct" as likely to produce imminent lawlessness. Id.

Second, Massey argues that the indictment does not show any "organizational relationship" between him and those listening to him. Def.'s Mot. to Dismiss Indictment at 10. But he does not cite any authority indicating that such a relationship is required, nor has the Court found any. The Court overrules this argument as a basis for dismissal.

Third, Massey argues that the Anti-Riot Act does not contemplate damage to the property of a store because section 2102(a) specifies "damage to the property of any other person." Id. at 11–12. The Dictionary Act, however, clarifies that every federal statute's use of the term "person" includes "corporations, companies, associations, forms, partnerships, societies, and joint stock companies, as well as individuals" unless the context of the statute indicates otherwise. 1 U.S.C. § 1; see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 199 (1993). Nothing in the Anti-Riot Act suggests Congress intended to confine its usage of "person" to natural persons. Moreover, such a limited construction would effectively undermine the purpose of the statute.

Lastly, Massey argues that the circumstances surrounding the police shooting of Latrell Allen, rather than Massey's speech, precipitated the property damage alleged in

7

the indictment. Def.'s Mot. to Dismiss Indictment at 12–13. This isn't a basis for dismissal, however; at most it amounts to an evidentiary issue to be addressed at trial. *See Moore*, 363 F.3d at 586 ("To the extent that [defendants] rely on facts outside of the indictment, they are really arguing that there was insufficient evidence to support their convictions.").

In sum, the Court concludes that the indictment sufficiently alleges that Massey violated the Anti-Riot Act.

## Conclusion

The Court denies Massey's motion to dismiss the indictment [dkt. no. 51].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 7, 2022